UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
JASON MARLEY,

                        Plaintiff,

         -against-

UNITED STATES OF AMERICA, *et al.*,

                        Defendants.
----------------------------------------------------------X

REPORT AND
RECOMMENDATION
18 CV 3495 (EK)(RML)

LEVY, United States Magistrate Judge:

        Plaintiff Jason Marley ("plaintiff"), a prisoner proceeding *pro se* and *in forma pauperis*, brings claims under 42 U.S.C. § 1983 and the Federal Tort Claims Act ("FTCA") against defendants Dr. Bruce Bialor ("Dr. Bialor"), Nurse Practitioner Clodina Babson ("Babson"), Nurse Practitioner Beverly Timothy ("Timothy," and collectively, the "individual defendants"),[1] and the United States (together with the individual defendants, the "defendants").[2] Defendants filed a motion for summary judgment on September 17, 2021. (Motion for Summary Judgment, dated Mar. 31, 2021, Dkt. No. 104.) Plaintiff has not opposed or otherwise responded to the motion.

        By order dated September 17, 2021, the Honorable Eric R. Komitee, United States District Judge, referred defendants' motion for summary judgment to me for report and recommendation. For the reasons explained below, I respectfully recommend that defendants' motion be granted.

---

[1] By letter dated October 24, 2019, plaintiff withdrew all claims against defendant Bridget Baker. (Letter of Jason Marley, dated Oct. 24, 2019, Dkt. No. 66.)

[2] Dr. Bialor is identified in the caption as "Bruce Bailor" and Nurse Clodina Babson is identified as "Claudia Babson."

## Background and Facts

Beginning in April 2016, plaintiff was detained at the Metropolitan Detention Center ("MDC") in Brooklyn, New York while he awaited trial. (Defendants' Rule 56.1 Statement, dated Mar. 31, 2021 ("Rule 56.1 Statement"), Dkt. No. 105, ¶ 2.)[3] In March 2018, plaintiff was transferred to the Metropolitan Correction Center in Manhattan. (Id. ¶ 3.) Following his conviction, plaintiff was returned to the MDC for a few weeks and then was transferred to the Allenwood Correctional Facility ("Allenwood") in Pennsylvania where he is currently serving his sentence. (Id. ¶¶ 1, 3-4.)

On September 8, 2016, while plaintiff was a pretrial detainee at the MDC, he slipped and fell while descending a flight of stairs to report to work. (Id. ¶¶ 2, 15, 16.) Plaintiff testified at his deposition that prior to his fall, on his way upstairs to visit a friend, he observed individuals wiping one of the two sets of stairs. (Id. ¶ 9; Portion of Plaintiff's Deposition Transcript, Part 1 ("Pl.'s Dep. Pt. 1"), annexed as Ex. B to the Declaration of AUSA Melanie Speight, dated Mar. 31, 2021 ("Speight Decl."), Dkt. No. 106-2, 90:12-91:6.) Plaintiff knew that it was normal routine for porters to wipe down the stairs every morning. (Rule 56.1 Statement ¶ 11; Pl.'s Dep. Pt. 1 at 91:7-11; 92:6-12.) Plaintiff also knew that a porter mopped the floor while

---

[3] The facts are taken from defendants' Rule 56.1 statement. "Where the nonmoving party fails to submit a statement of material facts as to which there exists a genuine issue to be tried as required by Local Rule 56.1, the court is required to take the allegations of the moving party's 56.1 statement as fact, and all material allegations as admitted and uncontroverted." Dasher v. N.Y. City Police Dep't, No. 94 CV 3847, 1999 WL 184118, at * 3 n.2 (E.D.N.Y. Mar. 18, 1999) (citations omitted). Because plaintiff has not submitted a Rule 56.1 statement, defendants' Rule 56.1 statement will be accepted as uncontroverted fact for the purposes of this motion. I note that defendants confirmed that they served on plaintiff a notice of his rights and responsibilities under Rule 56, as required by Local Civil Rule 56.2. (See Notice to Pro Se Litigant Who Opposes A Motion for Summary Judgment, dated Mar. 31, 2021, Dkt. No. 108 (failure to respond to Rule 56.1 statement with affidavits or documents may result in facts in defendants' Rule 56.1 statement being deemed true).)

he was speaking to his friend. (Rule 56.1 Statement ¶ 12; Pl.'s Dep. Pt. 1 at 94:20-95:8.) Additionally, plaintiff stated that "there were no signs or any other indication to alert [him] that the staircase had been recently mopped and was slippery." (Rule 56.1 Statement ¶ 12; Affidavit of Plaintiff, dated Oct. 21, 2016 ("Pl.'s Aff."), annexed as Ex. F to the Speight Decl., Dkt. No. 106-6, ¶ 3.)

The fall caused plaintiff to experience back, neck, and shoulder pain. (Rule 56.1 Statement ¶¶ 15-17, 19.) Additionally, plaintiff cut his ear and experienced leg pain. (Id. ¶¶ 17, 19, 43.) Plaintiff was treated at the MDC medical unit on the day of his fall. (Id. ¶ 17.) Plaintiff claims that he was seen by a registered nurse who took his vitals and sent him back to work. (Second Amended Complaint, dated Sept. 30, 2019 ("Second Am. Compl."), Dkt. No. 61.) Defendants did not treat plaintiff on the day of his fall; he was seen by non-parties. (Rule 56.1 Statement ¶ 17.)

The following day, on September 9, 2016, plaintiff received additional care. (Id. ¶ 19.) He was given a Ketorolac injection and a prescription for Naproxen, both nonsteroidal anti-inflammatory medications. (Id.) Dr. Bialor also referred plaintiff for x-rays of his spine and right shoulder. (Id.) The spine x-ray came back "normal," and the shoulder x-ray was noted as "unremarkable." (Id.)

On September 12, 2016, Dr. Bialor prescribed plaintiff more Naproxen and Ketorolac injections. (Id. ¶ 20.) On September 19, 2016, Dr. Awd, a non-party, prescribed plaintiff a different nonsteroidal anti-inflammatory drug, Meloxicam, and ordered additional x-rays as well an electrocardiogram. (Id. ¶ 21.) Plaintiff's chest x-ray came back "normal." (Id. ¶ 21.) His L-Spine x-ray revealed no new fractures, "unremarkable" joints, "[m]oderate degenerative disc disease at L4-L5," an "old gunshot wound with bullet fragments in the

posterior back soft tissues at the L4-L5," and an "old L4 transverse process fracture." (Id.)  His

C-Spine x-ray revealed moderate degenerative disc disease.  (Id.)

On September 28, 2016, plaintiff received additional treatment for his lower back

pain.  (Id. ¶ 22.)  Dr. Bialor prescribed a single dose Ketorolac injection and a week of

Prednisone corticosteroid tablets.  (Id.)  Plaintiff was also temporarily assigned a bottom bunk.

(Id.)

Plaintiff continued to receive treatment at the MDC from the individual

defendants and others until June 2018 when he was sent to Allenwood.  (See id. ¶¶ 19-54.)

Throughout this time, plaintiff complained that his treatment modalities, which included pain

relief pills, pain relief injections, counseling, x-rays, consultations with specialists, physical

therapy, and occupational therapy, did not adequately alleviate his pain.  (See id. ¶¶ 19-55.)

From September 9, 2016 to February 13, 2017, plaintiff sent emails to the Bureau

of Prisons ("BOP") complaining about his pain and medical treatment.  (Id. ¶ 55.)  Though he

was aware that the MDC had an administrative grievance program, plaintiff did not file any

grievance forms or pursue the MDC's Administrative Remedy Program.  (Id. ¶¶ 56-57.)  Plaintiff

claims that he did not file any administrative grievance forms because the MDC staff gave him

the "run around" and did not assist him.  (Id. ¶ 59.)  However, plaintiff did file an Administrative

Tort Claim with the BOP, which was denied on August 1, 2017.  (Id. ¶ 60-63.)

On June 12, 2018, plaintiff commenced this action.  (Complaint, dated June 11,

2018 ("Compl."), Dkt. No. 1.)  On September 30, 2019, plaintiff filed a Second Amended

Complaint, which is the operative pleading in this case.  (See Second Am. Compl.)  Plaintiff

brings a claim against the individual defendants under 42 U.S.C. § 1983 for the allegedly

inadequate medical care he received while incarcerated at the MDC.  Plaintiff also brings a

negligence claim pursuant to the Federal Tort Claims Act ("FTCA") against defendant United States.

**DISCUSSION**

I.     **Legal Standard**

Rule 56(a) of the Federal Rules of Civil Procedure provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A fact is 'material' for these purposes when it 'might affect the outcome of the suit under the governing law.'" Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 104 (2d Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). No genuine issue of material fact exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Liberty Lobby, 477 U.S. at 249-50 (citations omitted).

The moving party bears the initial burden of establishing the absence of any genuine issue of material fact. See Liberty Lobby, 477 U.S. at 256; Holcomb v. Iona Coll., 521 F.3d 130, 137 (2d Cir. 2008). This showing can be accomplished by citation to "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." See FED. R. CIV. P. 56(c). The moving party may show prima facie entitlement to summary judgment by either: (1) pointing to evidence that negates an opponent's claims; or (2) identifying portions of an opponent's evidence that demonstrate the absence of a genuine issue of material fact. Salahuddin v. Goord, 467 F.3d 263, 272-73 (2d Cir. 2006) (citing Celotex Corp v. Catrett, 477 U.S. 317, 323 (1986); Farid v. Smith, 850 F.2d 917, 924 (2d Cir. 1988)). To determine whether

the moving party has carried its burden, the court is required to "constru[e] the evidence in the light most favorable to the nonmoving party and draw[ ] all inferences and resolv[e] all ambiguities in favor of the nonmoving party."  Doro v. Sheet Metal Workers' Int'l Ass'n, 498 F.3d 152, 155 (2d Cir. 2007); Woodman v. WWOR-TV, Inc., 411 F.3d 69, 75 (2d Cir. 2005).

When considering a dispositive motion defended by a *pro se* litigant, a court "must 'liberally construe[]' the *pro se* party's pleadings in his favor and hold him to 'less stringent standards than formal pleadings drafted by lawyers.'"  Laurent v. Edwin, 528 F. Supp. 3d 69, 84 (E.D.N.Y. 2021) (quoting Hughes v. Rowe, 449 U.S. 5, 9-10 (1980)); see also Bertin v. United States, 478 F.3d 489, 491 (2d Cir. 2007) ("[The Second Circuit] liberally construe[s] pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest." (internal quotation marks and citations omitted)).  However, "[p]roceeding *pro se* does not otherwise relieve a litigant of the usual requirements of summary judgment . . . ."  Rodriguez v. Hahn, 209 F. Supp. 2d 344, 348 (S.D.N.Y. 2002) (internal quotation marks and citation omitted).

## II.    Analysis

### A.  Bivens Claim

#### 1.   Prison Litigation Reform Act

In Bivens v. Six Unknown Narcotics Agents, 403 U.S. 388 (1971), the Supreme Court recognized "an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights."  McGowan v. United States, 825 F.3d 118, 123 (2d Cir. 2016) (quoting Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 66 (2001)).  Defendants first argue that they are entitled to summary judgment because plaintiff's Bivens claim is barred by his failure to exhaust available administrative remedies in accordance with the Prison Litigation

Reform Act ("PLRA").  (See Defendants' Memorandum in Support of Motion for Summary Judgment, dated Mar. 31, 2021 ("Defs.' Mem."), Dkt. No. 107, 9-12.)  The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The exhaustion requirement applies to "federal prisoners suing under Bivens[,]" and encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes."  Porter v. Nussle, 534 U.S. 516, 524, 532 (2002); see also Hernández v. Coffey, 582 F.3d 303, 305 (2d Cir. 2009).

"[T]he PLRA 'requires proper exhaustion, which means using all steps that the prison grievance system holds out.'"  Ayala-Rosario v. Westchester Cty., No. 19 CV 3052, 2020 WL 3618190, at *4 (S.D.N.Y. July 2, 2020) (quoting Williams v. Priatno, 829 F.3d 118, 122 (2d Cir. 2016)).  "[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,'—rules that are defined not by the PLRA, but by the prison grievance process itself."  Jones v. Bock, 549 U.S. 199, 218 (2007) (internal citation omitted).  The exhaustion requirement is "mandatory," and "unexhausted claims cannot be brought in court."  Id. at 211.

As an inmate in federal custody, plaintiff was required to exhaust BOP's grievance process.  See Johnson v. Rowley, 569 F.3d 40, 45 (2d Cir. 2009) (holding that a federal inmate "had to comply with the BOP's . . . administrative grievance system for prisoner complaints").  The four-step process is as follows:

> First, the inmate must present his or her complaint to a staff member on a BP-8 form. If the issue is not resolved, the inmate must then submit an Administrative Remedy Request—on a BP-9 form—to the Warden within 20 calendar days of the incident that

triggered the complaint. Where the inmate is not satisfied with the Warden's response, the inmate must submit an appeal to BOP's Regional Director on a BP-10 form, and must do so within 20 calendar days of the Warden's response. Where the inmate is not satisfied with the Regional Director's response, the inmate must file a Central Office Administrative Remedy Appeal on a BP-11 form with the BOP's General Counsel, and must do so within 30 calendar days of the Regional Director's response.

Gottesfeld v. Anderson, No. 18 CV 10836, 2020 WL 1082590, at *6 (S.D.N.Y. Mar. 6, 2020).

There are three circumstances under which a BOP inmate's failure to exhaust the four-step process is excusable because relief is considered unavailable:

First, an administrative remedy may be unavailable when "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." In other words, "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." Third, an administrative remedy may be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

Williams v. Correction Officer Priatno, 829 F.3d 118, 123-24 (2d Cir. 2016) (quoting Ross v. Blake, 578 U.S. 632, 643-44 (2016)).

Here, while plaintiff filed an Administrative Claim with the BOP for settlement under the Federal Tort Claims Act, plaintiff did not file a BP-8 or BP-9 form with the MDC relating to his alleged fall and medical treatment.  (Rule 56.1 Statement ¶ 56; Defs.' Mem. at 11-12; Administrative Claim, dated Feb. 8, 2017, annexed as Ex. F to the Speight Decl., Dkt. No. 106-6; Sentry Report, dated Aug. 8, 2018, annexed as Ex. H to the Speight Decl., Dkt. No. 106-8.)  Thus, plaintiff did not properly exhaust the available administrative remedies.

Based on the record before the court, plaintiff has not established that the administrative remedies were unavailable to him. Plaintiff has not shown that BOP's

administrative remedies process operated "as a simple dead end," or that it was "so opaque that it [was], practically speaking, incapable of use." Ross, 578 U.S. at 643. Plaintiff was aware that the MDC had an administrative grievance process, and he was familiar with forms B-8, B-9, B-10, and B-11. (Rule 56.1 Statement ¶¶ 57-58; see also Pl.'s Dep. Pt. 1 at 30:24-35, 31:2-24.) Additionally, plaintiff has not sufficiently demonstrated that "prison administrators thwart[ed] inmates from taking advantage of a grievance process through machination, misrepresentation or intimidation." Ross, 578 U.S. at 644. Plaintiff alleges that he did not file the forms because staff at the MDC gave him the "run around" and failed to assist him. (Rule 56.1 Statement ¶ 59; see also Pl.'s Dept. Pt. 1 at 32:5-35, 33:2-7; 34:14-25; 36:4-25; 38:8-25; 39:19-25; 40:2-16; 41:2-22.) However, "conclusory statements about a MDC staff member's obstruction of plaintiff's utilization of the grievance process are insufficient to raise a genuine dispute of material fact." Gumbs v. Dynan, No. 11 CV 857, 2012 WL 3705009, *8 (E.D.N.Y. Aug. 26, 2012) (citing Mitchell v. Senkowski, 158 F. App'x. 346, 350 (2d Cir. 2005)).

Because plaintiff did not properly exhaust all steps in accordance with BOP's administrative grievance process, I find that his Bivens claim is barred by the PLRA. Therefore, I respectfully recommend that defendants' motion for summary judgment be granted with respect to the Bivens claim.

## 2. Inadequate Medical Care

Even if plaintiff had properly exhausted his administrative remedies, defendants would still be entitled to summary judgment on the Bivens claim. Plaintiff brings a Bivens claim against each of the individual defendants for deliberate indifference. He claims the individual defendants failed to provide him with adequate medical care by "choosing to follow an inefficacious course of treatment after having the knowledge that the treatment was not relieving

[his] pain and that [he] was suffering irreparable harm affecting his daily activities." (Second Am. Compl. ¶ 17.)  Additionally, plaintiff alleges that defendants "refused the recommendations of the pain management specialist for effective treatment and denied [p]laintiff access to an orthopedic specialist." (Id.)

While plaintiff invokes the Eighth Amendment, a pretrial detainee's claim for inadequate medical treatment arises under the Due Process Clause of the Fifth Amendment.  See Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017) (holding Eighth Amendment inapplicable to pretrial detainees); Cuoco v. Moritsugu, 222 F.3d 99, 106 (2d Cir. 2000) (holding that pre-trial detainee's claims were properly analyzed under the Due Process Clause of the Fifth Amendment).  See also Laurent, 528 F. Supp. 3d at 85.  However, whether the claim for inadequate medical treatment arises under the Eighth or Fifth Amendment, the same standard applies.  Cuoco, 222 F.3d at 106.  A pretrial detainee's due process rights "are at least as great as the Eighth Amendment protections available to a convicted prisoner."  City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983) (citation omitted).

"Courts in the Second Circuit apply a two-prong test to claims of inadequate medical care under the Due Process Clause of the Fifth Amendment."  Laurent, 528 F. Supp. at 85.  "The plaintiff must show that (1) he has a serious medical need, and (2) the defendant acted with deliberate indifference to that need."  Id. (citing Coronel v. Decker, 449 F. Supp. 3d 274, 282 (S.D.N.Y. 2020); Cuoco, 222 F. 3d at 106; Charles v. Orange County, 925 F.3d 73, 85-86

(2d Cir. 2019)).  See also Martinez v. United States, No. 20 CV 7275, 2021 WL 4224955 (S.D.N.Y. Sept. 16, 2021).[4]

       a.   Serious Medical Need

      The serious medical need prong is considered the "objective prong" because "the challenged conditions [must be] sufficiently serious to constitute objective deprivations of the right to due process."  Darnell, 849 F.3d at 29.  "The Second Circuit "consider[s] factors such as whether a reasonable doctor or patient would find the injury important and worthy of treatment, whether the medical condition significantly affects an individual's daily activities, and whether the illness or injury inflicts chronic and substantial pain."  Charles, 925 F.3d at 86 (citing Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998)).

---

[4] Defendants rely on a slightly different articulation of the inadequate medical care standard. (See Defs.' Mem. at 13.)  In Thomas v. Wolf, the Second Circuit described the two prongs as follows:

> The first, which is objective, requires the inmate to show that he was "actually deprived of adequate medical care" by an official's failure "to take reasonable measures in response to a [sufficiently serious] medical condition." The second element, which is subjective, requires the inmate to demonstrate that the official acted with a culpable state of mind of "subjective recklessness," such that the official knew of and consciously disregarded "an excessive risk to inmate health or safety[.]".

832 F. App'x 90, 92 (2d Cir. 2020) (quoting Salahuddin v. Goord, 467 F.3d 263, 279-80 (2d Cir. 2006); Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011)).  The court in Thomas did not overturn or reject the other version of the standard, see Charles, 925 F.3d at 86, and Darnel, 849 F.3d at 29, nor did the Second Circuit suggest that there were any meaningful inconsistencies between the different articulations.  See Thomas, 832 F. App'x at 92.  Given this, this court will apply the version of the standard that is more commonly relied upon by district courts in this Circuit.  See, e.g., Irizarry v. Manhattan Corr. Ctr., No. 21 CV 5170, 2022 WL 375360, at *4 (S.D.N.Y. Feb. 8, 2022); Cruz v. Hastings, No. 20 CV 4 392, 2021 WL 4691375, at *7 (S.D.N.Y. Oct. 6, 2021); Martinez v. United States, No. 20 CV 7275, 2021 WL 4224955, at *5 (S.D.N.Y. Sept. 16, 2021); Irizarry v. Manhattan Corr. Ctr., No. 21 CV 5170, 2021 WL 3668045, at *4 (S.D.N.Y. Aug. 17, 2021); Laurent v. Edwin, 528 F. Supp. 3d 69, 85 (E.D.N.Y. 2021).

Here, plaintiff alleges that, as a result of his injuries, he suffered, among other things, substantial, persistent back pain and that his day-to-day activities were significantly impacted by the injury.  (See Second Am. Compl. ¶¶ 7-15, 17.)  Plaintiff's medical records demonstrate that plaintiff regularly conveyed these complaints to medical providers, underwent treatments to address the pain, and required, at times, the aid of a cane.  (See Rule 56.1 Statement ¶¶ 17-56.)  Viewing the evidence in the light most favorable to plaintiff, I find that the evidence raises a genuine dispute as to whether a reasonable doctor or patient would find plaintiff's complaints "worthy of treatment," whether his "medical condition significantly affect[ed] [his] daily activities," and whether he experienced "chronic and substantial pain."  See Charles, 925 F.3d at 86 (citing Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998)); see also Benjamin v. Kooi, No. 07 CV 506, 2010 WL 985844, at *7 (N.D.N.Y. Feb. 25, 2010) (finding a genuine dispute where plaintiff "complained of back pain and migraines for more than a year and his CT scan showed evidence of a degenerative disc disease" (record citations omitted)), report and recommendation adopted, 2010 WL 985823 (N.D.N.Y. Mar. 17, 2010); Flemming v. City of New York, No. 03 CV 662, 2009 WL 3174060, at *8, n.9 (E.D.N.Y. Sept. 30, 2009) ("Depending on the circumstances, severe back pain may qualify as a 'serious medical need.'" (collecting cases)). Defendants also do not dispute that plaintiff's back pain could constitute a sufficiently serious medical condition. (See Defs.' Mem. at 15.) Accordingly, I find that a reasonable fact finder could find that plaintiff's condition rose to the level of a serious medical need.

### b.  Deliberate Indifference

To establish deliberate indifference, a plaintiff must show that a defendant "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to

mitigate the risk that the condition posed to the pretrial detainee even though the [defendant] knew, or should have known, that the condition posed an excessive risk to health or safety." Darnell, 849 F.3d at 35.  Plaintiff must prove "that an official acted intentionally or recklessly, and not merely negligently."  Id. at 36; see also Charles, 925 F.3d at 87 ("[M]ere medical malpractice is not tantamount to deliberate indifference[.]").

"A claim based on an inmate's disagreement with the defendants' medical judgment as to the proper course of treatment cannot support a constitutional claim for deliberate indifference." Mena v. City of New York, No. 13 CV 2792, 2018 WL 4328827, at *5 (E.D.N.Y. Sept. 11, 2018) (citing Simpson v. Oakes, 640 F. App'x 86, 88 (2d Cir. 2016)).  Further, it is "generally understood that 'the ultimate decision of whether or not to administer a treatment or medication is a medical judgment that, without more, does not amount to deliberate indifference.'" Laurent, 28 F. Supp. 3d at 87 (quoting Jacks v. Annucci, No. 18 CV 3291, 2019 WL 3239256, at *4 (S.D.N.Y. July 18, 2019)).  See also Smalls v. Wright, 807 F. App'x 124, 126 (2d Cir. 2020) ("[Defendants'] decisions not to order an MRI and not to refer [plaintiff] to a specialist constitute matters of medical judgment that do not give rise to [a constitutional] violation.")

Plaintiff alleges that defendants were "negligent and failed in their duty to provide [him] adequate medical care" because they chose "to follow an inefficacious course of treatment after having knowledge that the treatment was not relieving [his] pain[,] . . . refused the recommendations of the pain management specialist for effective treatment[,] and denied Plaintiff access to an orthopedic specialist."  (Second Am. Compl. ¶¶ 17-18.)  However, the record demonstrates that the individual defendants, along with other non-parties, provided plaintiff with consistent and varied medical care to address his pain.  (See Rule 56.1 Statement

¶¶ 17-54.)  Plaintiff was prescribed pain relief medications to alleviate his pain, including Tylenol, Ibuprofen, Naproxen, Meloxicam, Prednisone, and Ketorolac.  (Id. ¶¶ 19-22, 26, 29-31, 33-34, 37, 40-42.)  He underwent x-rays of his chest and spine, which showed no fractures and otherwise "unremarkable" results (Id. ¶¶ 19, 21, 28, 33, 35) and was referred to an orthopedic clinic as well as physical and occupational therapy.  (Id. ¶¶ 34, 39, 44-45.)  Finally, plaintiff was given a cane as an assistive device and assigned a lower bunk in an effort to reduce the strain on his back.  (Id. ¶¶ 22, 24.)

There is no evidence to suggest that defendants acted intentionally to create plaintiff's injuries or that defendants recklessly failed to act with reasonable care to mitigate plaintiff's condition.  To the contrary, the record demonstrates that the individual defendants attempted to facilitate plaintiff's preferred course of treatment and respond to his complaints of pain.  (See id. ¶¶ 17-53.)  Furthermore, plaintiff's disagreement with the individual defendants' medical judgment or preference for an alternative course of care are not sufficient grounds to establish deliberate indifference.  Therefore, I find that plaintiff has failed to establish a claim for inadequate medical care under the Fifth Amendment, and I respectfully recommend that defendants' motion for summary judgment be granted as to plaintiff's Bivens claim.

B.  FTCA Claim

The court next turns to plaintiff's claim against the United States pursuant to the FTCA.  "The FTCA provides a cause of action against the United States for any 'negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission

occurred.'" <u>King v. United States</u>, No. 16 CV 2565, 2020 WL 1234236, at *3 (E.D.N.Y. Mar. 13, 2020) (quoting 28 U.S.C. § 1346(b)).

The basis of plaintiff's FTCA claim is unclear based solely on the Second Amended Complaint; however, upon referencing the original complaint and the First Amended Complaint, the court understands plaintiff's FTCA claim to be for the negligence of the United States' agents, employees and licensees in failing to warn plaintiff of wet stairs following routine maintenance.  (<u>See</u> Second Am. Compl. ¶¶ 5, 18; First Amended Complaint, filed Apr. 8, 2019 ("First Am. Compl."), Dkt. No. 42, ¶ 23; Compl. ¶¶ 13, 15, 17-23.)  Defendants argue that "[t]he Court lacks jurisdiction over this claim because it falls within the discretionary function exception ("DFE") to the FTCA" and that "even if the Court were to consider Plaintiff's claim, it fails on the merits."[5]  (Defs.' Mem. at 19.)

1.  <u>Discretionary Function Exception</u>

---

[5] "Lawsuits brought under the FTCA are subject to two limitations periods: first, a tort claim must be presented to the appropriate federal agency within two years of its accrual, and second, the subsequent federal action must be commenced within six months after the agency mails a notice of final denial of the claim."  <u>Appolon v. United States</u>, No. 16 CV 2275, 2017 WL 3994925, at *8 (E.D.N.Y. Sept. 6, 2017) (citing 28 U.S.C. § 2401(b)), <u>report and recommendation adopted</u>, 2018 WL 461241 (E.D.N.Y. Jan. 18, 2018).  Plaintiff properly submitted an Administrative Tort Claim to BOP within two years of his fall.  (<u>See</u> Rule 56.1 Statement ¶ 60; Plaintiff's Administrative Claim, annexed to the Speight Decl. as Ex. F, Dkt. No. 106-6.)  BOP denied plaintiff's claim by letter dated August 1, 2017, and informed plaintiff of his right to bring an action in federal court within six months of the date of the letter.  (<u>See</u> Rule 56.1 Statement ¶ 62; Claim Denial Letter, annexed to the Speight Decl. as Ex. G, Dkt. No. 106-7.) However, plaintiff did not commence this action until June 12, 2018—ten months after BOP denied his administrative tort claim.  (<u>See</u> Rule 56.1 Statement ¶ 63; Compl.)

Defendants do not argue for dismissal on the basis of timeliness at this stage "because plaintiff disputes facts regarding the timing of his attempt to file the Complaint in this matter."  (Defs.' Mem. at 19 n. 2; <u>see also</u> First Am. Compl. ¶¶ 103, 114-119.)  Because the FTCA's statute of limitations is non-jurisdictional and subject to equitable tolling, <u>see United States v. Wong</u>, 575 U.S. 402, 420 (2015); <u>Irizarry v. Manhattan Corr. Ctr.</u>, 2022 WL 375360, at *3 n. 6, I defer addressing the timeliness of plaintiff's suit.

To the extent plaintiff argues that the United States was negligent by failing to place signs warning that the staircase was wet, defendants argue that such a theory of liability falls within the discretionary function exception ("DFE") to the FTCA.  (Defs.' Mem. at 19.)  The DFE bars government liability with respect to "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."  28 U.S.C. § 2680(a).  "Courts do not retain subject matter jurisdiction over claims that fall within the DFE. . . ."  Maghen v. United States, No. 19 CV 6464, 2021 WL 4172060, at *2 (E.D.N.Y. Sept. 14, 2021) (citing Huntress v. United States, 810 F. App'x 74, 76 (2d Cir. 2020), cert. denied, 141 S. Ct. 1056 (2021)).  A suit is barred by the DFE "only if two conditions are met: (1) the acts alleged to be negligent must be discretionary, in that they involve an 'element of judgment or choice' and are not compelled by statute or regulation and (2) the judgment or choice in question must be grounded in 'considerations of public policy' or susceptible to policy analysis."  Coulthurst v. United States, 214 F.3d 106, 109 (2d Cir. 2000) (quoting United States v. Gaubert, 499 U.S. 315, 322-23 (1991)).

The BOP is statutorily vested with "'charge of the management and regulation of all Federal penal and correctional institutions,' and must 'provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States[.]'"  Scott v. Quay, No. 19 CV 1075, 2020 WL 8611292, at *13 (E.D.N.Y. Nov. 16, 2020) (quoting 18 U.S.C. §§ 4042(a)(1)-(2)).  "The statute does not direct the BOP how to fulfill its duties, nor does the statute mandate particular conduct by the BOP."  Ojo v. United States, No. 16 CV 4112, 2019 WL 3852391, at *7 (E.D.N.Y. Aug. 15, 2019), report and recommendation adopted, 2019 WL 4602823 (E.D.N.Y. Sept. 23, 2019).  Courts in

this Circuit have found that the statute gives BOP officials significant discretion to administer their duties as they see fit.  Id.; see also Fernandini v. United States, No. 15 CV 3843, 2019 WL 1033797, at *4 (S.D.N.Y. Mar. 5, 2019) (concluding that "decisions regarding the best way to comply with this broad statutory mandate are discretionary in nature"); Enigwe v. Zenk, No. 03 CV 854, 2007 WL 2713849, at *8 (E.D.N.Y. Sept. 14, 2007) (holding that "in general decisions regarding the best way to safeguard prisoners are discretionary in nature").  Here, the acts alleged to be negligent were not compelled by the statute and were discretionary in that they involved an element of judgment or choice by BOP.  Thus, I find that the first condition of the DFE is satisfied.

The second condition is satisfied when the challenged conduct is "based on 'considerations of public policy,' since the purpose of the exception is to 'prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort."  Enigwe, 2007 WL 2713849, at *8 (quoting Berkovitz by Berkovitz v. United States, 486 U.S. 531, 537 (1988)).  "Where a regulation, rule, or statute allows the employee discretion, a strong presumption arises that the employee's acts are grounded in policy when exercising that discretion."  Quay, 2020 WL 8611292, at *13.  Defendants argue that "[m]aintaining a clean space directly serves BOP's requirement of providing safe and suitable quarters" and that "decisions about routine maintenance . . . involve policy considerations including, for example, funding, inmate capacity, inmate work assignments, the layout of the inmate's housing unit, and the scheduled and anticipated foot traffic of inmates and correctional staff throughout a given area."  (Defs.' Mem. at 21.)  Defendants contend that "[t]hese are the types of necessary judgments meant to be shielded by the DFE."  (Id.)  Courts in this Circuit have found that prison officials' day-to-day

decisions regarding "prison population, facility maintenance, and the manner of implementing pest control . . . fall well within the scope of the discretionary function."  Fernandini, 2019 WL 1033797, at *5; see also Barone v. United States, No. 12 CV 4103, 2015 WL 10791889, at *18 (S.D.N.Y. Oct. 29, 2015) ("BOP decisions regarding prison management and maintenance typically are subject to numerous policy considerations."), report and recommendation adopted in part, 2016 WL 2658174 (S.D.N.Y. May 5, 2016), aff'd, 722 F. App'x 57 (2d Cir. 2018).

However, "the Second Circuit has held, under the so-called 'negligent guard theory,' that an official's 'lazy or careless failure to perform his or her discretionary duties' are negligent acts that 'neither involve an element of judgment or choice within the meaning of Gaubert nor are grounded in considerations of governmental policy."  Id. (quoting Chen v. United States, No. 09 CV 2306, 2011 WL 2039433, at *6 (E.D.N.Y. May 24, 2011), aff'd sub nom., Qin Chen v. United States, 494 F. App'x 108 (2d Cir. 2012)); see also Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 475-76 (2d Cir. 2006); Young v. United States, 2014 WL 1153911, at *15 (E.D.N.Y. Mar. 20, 2014) (stating that a "[p]laintiff can overcome the FTCA's discretionary function exception if he can demonstrate that the officers' actions in [his] case were the result of laziness, carelessness, or inattentiveness, rather than grounded in policy considerations.").

Plaintiff testified at his deposition that the porters usually placed wet floor signs at the top and bottom of staircases.  (Pl.'s Dep. Pt. 1 at 90:12-91:15; see also Rule 56.1 Statement ¶ 12.)  Additionally, plaintiff testified that one of the porters approached him after he fell and admitted that he had forgotten to put up the wet floor sign after he had mopped the stairs.  (Pl.'s Dep. Pt. 1 at 92:15-23.)  The record supports a finding that the lack of a warning sign was the result of BOP employees' careless inattention. Therefore, I find that under the negligent guard

theory the DFE should not apply, and this court has subject matter jurisdiction over plaintiff's claim.

### 2. Negligence

Defendants next argue that plaintiff cannot establish negligence by defendant United States. (Defs.' Mem. at 21.) Under the FTCA, the liability of the United States is determined "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b); see also Morrison v. United States, No. 17 CV 6779, 2019 WL 5295119, at *7 (S.D.N.Y. Oct. 18, 2019) ("The FTCA requires the court to apply the substantive law of the place where the event occurred."). Since plaintiff's fall occurred at the MDC, New York law governs. "To prevail on a negligence claim under New York law, plaintiff must establish by a preponderance of the evidence: '(1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom.'" Gioeli v. United States, No. 14 CV 6806, 2018 WL 6191833, at *11 (E.D.N.Y. Nov. 28, 2018) (quoting Solomon v. City of New York, 489 N.E.2d 1294, 1294-95 (N.Y. 1985)).

In the Second Amended Complaint, plaintiff essentially alleges that defendants breached their duty of care by failing to warn plaintiff of the wet stairs. Plaintiff states that the "stairs were wet and slippery and there were no signs indicating the condition of the stairs." (Second Am. Compl. ¶ 5; see also Rule 56.1 Statement ¶ 12.) Plaintiff testified that the porters usually placed wet floor signs at the top and bottom of staircases (Pl.'s Dep. Pt. 1 at 90:12-91:15; see also Rule 56.1 Statement ¶ 12) and that one of the porters admitted to plaintiff that he had forgotten to put up the wet floor sign after mopping the stairs (Pl.'s Dep. Pt. 1 at 92:15-23). Defendants do not dispute that the stairs were wet; nor do they dispute that a porter may have forgotten to place a wet floor sign. (See generally Rule 56.1 Statement; Defs' Mem.)

However, even if plaintiff sufficiently established the duty and breach elements, plaintiff's negligence claim ultimately fails on the proximate cause prong.  Plaintiff is unable to demonstrate that the absence of a wet floor sign led to his fall. As defendants argue, "[a]ny express warning would have been superfluous . . . [because] Plaintiff possessed actual knowledge that the stairs had just been mopped, and he descended anyway." (Defs.' Mem. at 23.)

The record in this case is undisputed as to the material facts.  Plaintiff observed a porter wiping one of two sets of stairs on his way up the stairs to visit his friend, Brown Man. (Rule 56.1 Statement ¶¶ 8-9.)  At his deposition, plaintiff stated: "When I came up—before I went up the stairs, they was wiping –they wiped on the other side.  There are two floors – two steps.  They wiped the first side."  (Pl.'s Dep. Pt. 1 at 90:14-17.)  Though plaintiff only observed one set of stairs being mopped, he knew that it was routine for the porters to wipe down both sets of stairs every morning.  (Rule 56.1 Statement ¶ 10; Pl.'s Dep. Pt. 1 at 91:7-11; 92:6-12.) Plaintiff also knew that a porter was mopping the stairs while he was speaking to his friend, Brown Man.  (Rule 56.1 Statement ¶ 11.)  Plaintiff testified:

> A.  Okay. Okay.  I can't recall at the time I saw him mop, but I knew he mopped it, the floor, that morning, for a fact.
>
> Q.  And you knew that while you were talking with Brown Man, that he was mopping?
>
> A.  Yes, yes.
>
> Q.  And you knew from your previous experience that he would mop both staircases?
>
> A.  Yeah, three, all three staircases.

(Pl.'s Dep. Pt. 1 at 95:3-12.)  Plaintiff and Brown Man conversed for a total of fifteen to twenty minutes.  (Rule 56.1 Statement ¶ 8.)  While they were talking, plaintiff was told it was time to

report for work detail.  (Id. ¶ 13.)  Plaintiff remained with Brown Man for a minute or two and then joined the other inmates and started to make his way down the stairs.  (Id. ¶ 14.)  As he was descending the stairs, plaintiff slipped and fell.  (Id. ¶ 15.)  Thus, the record shows that plaintiff knew the stairs had recently been mopped prior to descending them.

Because plaintiff already knew that the stairs had been mopped and were wet, plaintiff is unable to establish a causal connection between the absence of a wet floor sign and his fall down the stairs.  See, e.g., Sadler v. Moran Towing Corp., 204 F. Supp. 2d 695, 698 (S.D.N.Y. 2002) (finding "it is clear in this case that there was no causal connection between any failure to warn and plaintiff's injury" where plaintiff's deposition demonstrated that he was fully aware of the dangerous condition); Bombard v. Cent. Hudson Gas & Elec. Co., 614 N.Y.S.2d 577, 580 (3d Dep't 1994) (upholding dismissal of claim for failure to warn of a dangerous condition where plaintiff testified in his deposition that he was fully aware of the danger in advance).  See also Ramsey v. Mt. Vernon Bd. of Educ., 821 N.Y.S.2d 651, 651 (2d Dep't 2006) (upholding dismissal of complaint where "plaintiff acknowledged that she saw the wet floor, was aware that it was being mopped immediately before walking across it, and was aware that this was a daily occurrence").  Accordingly, I find that plaintiff has not sufficiently established proximate cause.

With respect to plaintiff's FTCA claim, there are no disputed issues of material fact. Both parties are in agreement that plaintiff slipped on wet stairs and fell, and that there was no wet floor sign placed in the area to warn plaintiff.  The record also establishes that plaintiff was aware that the stairs were being mopped shortly before he fell.  As a result of the accident, plaintiff was injured, and he unfortunately continues to experience pain and discomfort. Nevertheless, since there is no dispute as to what happened, this is a matter that need not go to a

trier of fact and should instead be decided on the law, which is clear on the required outcome. The United States is not liable for a failure to warn of a condition that plaintiff already knew existed. Therefore, I must respectfully recommend that defendants' motion for summary judgment be granted with respect to plaintiff's FTCA claim.

CONCLUSION

For the reasons set forth above, I respectfully recommend that defendants' motion for summary judgment be granted. Any objections to this report and recommendation must be received within fourteen (14) days. Failure to file objections within the specified time waives the right to appeal the district court's order. See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(d). Defendants' counsel is directed to serve copies of this Report and Recommendation on the plaintiff within three days of the date of this Report and Recommendation and to file proof of service by ECF.

Respectfully submitted,


_____/s/_____
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
       April 20, 2022